# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 20-1559V**
**Filed: August 12, 2026**

| | |
|---|---|
| CARLA CARTER, *on behalf of her minor child, C.C.*,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Special Master Horner |

*Andrew Donald Downing, Brueckner Spitler Shelts, Scottsdale, AZ, former counsel for petitioner.*
*Courtney Christine Jorgenson, Siri & Glimstad, LLP, Phoenix, AZ, counsel for petitioner.*
*Nathaniel Trager, U.S. Department of Justice, Washington, DC, for respondent.*

## ORDER DENYING MOTION FOR RECONSIDERATION OF THE DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On November 10, 2020, petitioner filed a petition for compensation under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10, *et seq.* (2012), alleging that her child, C.C., suffered seizures and a stroke caused by her November 17, 2017 hepatitis B vaccination. (ECF Nos. 1, 26.) The case remains pending. On December 24, 2024, petitioner filed a first motion seeking an award of interim attorneys' fees and costs totaling $44,988.75, including $36,306.50 for attorneys' fees and $8,682.25 in attorneys' costs. (ECF No. 73.) On February 25, 2026, petitioner filed a second motion for an award of interim attorneys' fees and costs totaling $49,259.70, including $48,811.40 for attorneys' fees and $448.30 for attorneys' costs. (ECF No. 99; *see also*

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

ECF No. 100.) Respondent opposed both motions, arguing that the petition lacked a reasonable basis. (ECF Nos. 81, 101.) However, on July 24, 2026, I issued a decision finding that the petition did have a reasonable basis and awarding attorneys' fees and costs relative to the first motion only. (ECF No. 103.) On August 12, 2026, respondent filed a motion for reconsideration of that decision. (ECF No. 104.)

For the reasons discussed below, respondent's motion is **DENIED**. Because I am denying the motion and sustaining the decision at issue, it is not necessary to direct petitioner to file a response to the motion. Vaccine Rule 10(e)(2)-(3).

## I. Legal Standard for Reconsideration

Vaccine Rule 10(e), which governs motions for reconsideration, provides, "[e]ither party may file a motion for reconsideration of the special master's decision within 21 days after the issuance of the decision . . . ." Vaccine Rule 10(e)(1). Generally, "[a] court may grant such a motion when the movant shows '(1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice.'" *System Fuels, Inc. v. United States*, 79 Fed. Cl. 182, 184 (2007) (quoting *Amber Resources Co. v. United States*, 78 Fed. Cl. 508, 514 (2007)). Granting such relief requires "a showing of extraordinary circumstances." *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (citation omitted), *cert. denied*, 546 U.S. 826 (2005). Special masters have the discretion to grant a motion for reconsideration if to do so would be in the "interest of justice." Vaccine Rule 10(e)(3). It has previously been noted, however, that there is little guidance interpreting Vaccine Rule 10(e)(3) beyond the conclusion that it is within the special master's discretion to decide what constitutes the "interest of justice" in a given case. *See Krakow v. Sec'y of Health & Human Servs*., No. 03-632V, 2010 WL 5572074, at *3 (Fed. Cl. Spec. Mstr. Jan. 10, 2011) (granting reconsideration of motion to dismiss case for failure to prosecute).

Nonetheless, "a motion for reconsideration should not be used to gain a second opportunity to argue what was already decided." *Chuisano v. Sec'y of Health & Human Servs*., No. 07-452V, 2013 WL 6234660, at *20 (Fed. Cl. Spec. Mstr. Oct. 25, 2013) (citing *Fillmore Equip. of Holland, Inc. v. United States*, 105 Fed. Cl. 1, 9 (2012)). A party seeking reconsideration "must support the motion by a showing of extraordinary circumstances which justify relief." *Fru–Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 300 (1999). The motion for reconsideration "must be based 'upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court.'" *Prati v. United States*, 82 Fed. Cl. 373, 376 (2008) (quoting *Fru–Con Constr. Corp*., 44 Fed. Cl. at 300).

## II. Respondent's Argument

Respondent stresses that "[t]he Federal Circuit has expressly held that to establish reasonable basis, a petitioner's objective evidence must support each 'necessary element of a petition,' including 'a causal relationship between the administration of the vaccine and [the petitioner's] injuries.'" (ECF No. 104, p. 3

(quoting *Cottingham v. Sec'y of Health & Human Servs*., 971 F.3d 1337, 1346 (Fed. Cir. 2020).) Regarding the decision at issue, he asserts:

> [I]n order to find a reasonable basis for petitioner's claim, the Special Master was required to identify objective evidence in the record that "C.C. received the Hepatitis B vaccination and subsequently suffered from seizures and a stroke," Petition ⁋ 2 (emphasis added), and also that they were caused by the Hepatitis B vaccination. In the current decision, the Special Master did not describe the specific objective facts that provide the reasonable basis for a claim of either post-vaccination "seizures and a stroke" or causation. Both are required. Not only did the Special Master fail to articulate what specific testimonial evidence petitioner provided in support of either the alleged injury or causation, the Special Master provided no discussion of Dr. Spillers' medical theory or explanation for causation at all. These omissions of clearly articulated injury and causation analyses constitute a misapplication of *Cottingham*.

(*Id*. at 4 (footnote omitted).)

Respondent cites the Federal Circuit's decision in *Stratton v. Secretary of Health & Human Services*, 138 F.4th 1368, 1371-72 (Fed. Cir. 2025), for the proposition that a decision containing inadequate explanation and based on conclusory assertions with respect to reasonable basis is inadequate as a matter of law. (ECF No. 104, pp. 4-5.) Respondent contends that the decision did not adequately engage with respondent's arguments and reiterates many of those same arguments.

## III. Discussion

Having considered respondent's motion, I find that he has not presented circumstances that meet the standard for reconsideration. Respondent contends that reconsideration is available in the interest of justice. (ECF No. 104, p. 1.) In this case, however, respondent's arguments largely constitute an attempted second bite of the apple regarding what has already been decided. Moreover, they are not persuasive.

By way of brief background, this case involves an allegation that C.C., born on October 13, 2017, suffered a stroke at about one month of age on November 17, 2017, following receipt of a hepatitis B vaccination. (ECF No. 26, p. 1 (amended petition).) The fact of C.C.'s stroke, which first came to medical attention in April of 2018, is not disputed. (ECF No. 52, p. 19 (respondent's report).) However, respondent argues that the stroke occurred perinatally and disputes that there is adequate evidence to support the fact of any acute event happening on or around November 17, 2017. (*Id*.) The primary evidence regarding the events of November 17, 2017 is the fact hearing testimony of petitioner, C.C.'s mother.

Thus, the reasonable basis analysis in the complained-of decision consists of the following:

> I am not persuaded by respondent's arguments with respect to reasonable basis. In particular, respondent's argument that the fact hearing in this case did not elicit any objective evidence that could support a reasonable basis (ECF No. 101, p. 2) is contrary to Federal Circuit precedent. *James-Cornelius*, 984 F.3d at 1380 (stating that "we reject the Special Master's broad pronouncement that petitioners' affidavits are categorically 'not "objective" for purposes of evaluating reasonable basis.'"). Without suggesting that petitioner's testimony will carry her burden of proof, her testimony included direct observations of C.C.'s condition before and after vaccination and she authenticated contemporaneous photographs as part of that discussion. Thus, petitioner provided testimony going beyond her own subjective belief, consistent with what the Federal Circuit has concluded can be examined as part of the reasonable basis inquiry. Petitioner's testimony, coupled with her expert's opinion, are sufficient to meet the standard for reasonable basis. "More than a mere scintilla of evidence" is a very low evidentiary burden and petitioner is not obligated to present medical records including an express medical opinion in order to reach this low threshold. *See James-Cornelius*, 984 F.3d at 1380.
>
> On the whole, respondent's arguments speak more to respondent's ultimate interpretation of the record evidence than to whether there is "more than a mere scintilla of evidence" supporting the specific allegations underlying the petition. Even if petitioner does not prevail, she has filed an expert opinion by Dr. Spillers seeking to support her interpretation of the facts. Of course, the fact that an expert report was filed does not automatically establish a reasonable basis. *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). But in this case, without suggesting that Dr. Spillers' opinion will ultimately carry petitioner's burden of proof, it is sufficient to support a finding that the petition was initially brought with a reasonable basis. Respondent may ultimately succeed in arguing that his own expert's contrary opinion is more persuasive. However, the reasonable basis analysis does not turn on a petitioner's likelihood of success. *E.g., Moon v. Sec'y of Health & Human Servs.*, No. 21-0632V, 2025 WL 763753, at * 2 (Fed. Cl. Spec. Mstr. Feb. 4, 2025).
>
> In reaching this conclusion I am mindful of the guidance from the Federal Circuit that when assessing the reasonable basis for a petition, special masters are encouraged to keep in mind "the Vaccine Act's remedial objective of maintaining petitioners' access to willing and qualified legal assistance." *Sheller*, 121 F.4th at 1308 09.

(ECF No. 103, p. 5.)

To respondent's point, there is no question that this is a relatively brief analysis. However, respondent's motion conflates what the underlying record evidence must demonstrate with what the special master must explicitly articulate. Respondent is not persuasive in contending that the complained-of analysis did not address his arguments or weigh the evidence of record. Thus, respondent's citation to *Stratton,* which involved merely a single conclusory sentence, is not on point. 138 F.4th at 1372. In *Stratton*, respondent raised three arguments as to the sufficiency of the medical records and the petitioner's affidavit to establish a reasonable basis for the petition, which notably included the allegation that the medical records did not support either the existence of the alleged symptoms or any medical opinion to support vaccine-causation. *Id.* at 1371-72. The Chief Special Master acknowledged the reasonableness of these arguments, but, by the Federal Circuit's characterization, merely "brush[ed]" them aside by summarily declaring the medical records sufficient in light of the fact that the reasonable basis standard is "a notably easy-to-satisfy evidentiary standard." *Id.* at 1372-73. Given the lack of any expert opinion in that case, it would have been incumbent upon the Chief Special Master to explain, in light of respondent's contentions, how the medical records could circumstantially support the requisite showing. Here, however, although many details are challenged, the fact of C.C.'s stroke is not disputed and petitioner did provide an expert report to support her causation allegation, albeit one that respondent has sought to challenge. And, as discussed further below, the analysis at issue explained that petitioner's testimony and expert medical opinion in tandem were sufficient to meet the reasonable basis standard and provided multiple reasons why respondent's arguments were found to be unpersuasive.

Respondent argues that "[i]t is unclear from the current decision whether the Special Master relied upon petitioner's testimony solely for purposes of establishing injury or both injury and causation." (ECF No. 104, p. 10.) However, the analysis quoted above relies on the Federal Circuit's assessment of testimonial evidence as articulated in *James-Cornelius*, which explains that direct observations by lay witnesses, but not subjective belief as to causation, constitute objective evidence to be considered in assessing reasonable basis. 984 F.3d at 1380. Moreover, the analysis also separately cites petitioner's expert opinion as evidence she provided "to support her interpretation of the facts," *i.e*. to address the medical significance of her observations. (ECF No. 103, p. 5.) The decision is explicit in stating that the testimony and expert opinion were considered in tandem. Thus, contrary to respondent's suggestion, the analysis is clear in delineating that the lay testimony provides factual, not medical, evidence. In the instant motion, respondent argues that "[i]n summation, petitioner's testimony is uncorroborated suspicion that occurred only retrospectively – it is not contemporaneous firsthand objective evidence." (ECF No. 104, pp. 9-10.) Again, however, respondent's argument fails to acknowledge that petitioner testified to direct personal observations and not merely her suspicion of causation and his categorical rejection of the fact hearing testimony for all purposes is counter to the Circuit's precedent in *James-Cornelius*, as explicitly addressed in the complained-of analysis.

Respondent also argues that the decision lacks any explicit consideration of the evidence that detracts from the weight of petitioner's evidence. (ECF No. 104, p. 6.) In particular, though respondent notes that the decision acknowledged that respondent had argued that the medical records placed C.C.'s stroke in the prenatal or perinatal period, he observes that "this critical fact is nowhere addressed in the Court's reasonable basis analysis." (*Id.*) Importantly, however, the analysis did specifically address that an explicit medical opinion from within the medical records is not required to support a reasonable basis. Moreover, the medical records referenced were generated months after the vaccination at issue. (*See, e.g.*, Ex. 4, p. 266 (April 23, 2018 neurology encounter); Ex. 15, p. 112 (May 8, 2018 neurology encounter).) It is not the case that any pre-vaccination records directly refute petitioner's case by confirming the fact of a perinatal stroke prior to the event petitioner otherwise believes to have constituted the stroke and respondent has never argued that C.C.'s neurologic condition manifested prior to vaccination. Instead, both the treating physicians and respondent's expert opined that a "presumed" perinatal stroke occurred pre-vaccination but did not manifest until post-vaccination. (*E.g.*, Ex. A, p. 7.) The question as addressed by the above-quoted analysis involves competing hindsight interpretations of C.C.'s history by the experts (and treating physicians) as to whether the stroke that first came to medical attention in April of 2018 occurred perinatally or as a result of the incident petitioner described as occurring in November of 2017. The above-quoted analysis simply concludes that respondent's preferred interpretation of this evidence, even if ultimately persuasive, does not dictate that Dr. Spiller's competing medical opinion fails to constitute more than a mere scintilla of evidence, especially given that petitioner is not obligated to demonstrate a likelihood of success to establish a reasonable basis for the petition.

Finally, respondent suggests that his various arguments regarding Dr. Spiller's credibility, and therefore the weight that can be placed on his opinion, were seemingly ignored. (ECF No. 104, pp. 6-8.) However, this is not true. While respondent is certainly correct that the discussion of this point is not detailed, the above-quoted analysis does specifically note Dr. Spiller's opinion is sufficient to constitute more than a mere scintilla of evidence supporting causation but not necessarily preponderant evidence, which is a point that speaks directly to the weight that can reasonably be placed on Dr. Spiller's report. Significantly, even in his response to petitioner's pending motion for a ruling on the written record, respondent argues only that Dr. Spiller's opinion should garner "comparatively little weight" rather than contending that his opinion can be outright precluded. (ECF No. 95, pp. 17-22.)

## IV. Conclusion

In light of all of the above, respondent's motion for reconsideration is **DENIED**.

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master